

FILED
SEP 29 2003
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

Civil Action No. CIV03.4222

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

MITCHELL TEMPORARY, and DAKOTA PORK INDUSTRIES,

Defendants.

## COMPLAINT AND JURY TRIAL DEMAND

### NATURE OF THE ACTION

This action arises under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Varla Kryger ("Kryger"), who was adversely affected by such practices. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("Plaintiff" or the "Commission") alleges that Mitchell Temporary ("Mitchell Temporary") and Dakota Pork Industries ("Dakota Pork") unlawfully failed to hire Kryger because of her disability, deafness.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of South Dakota.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is an agency of the United States government charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Mitchell Temporary was a partnership of Lynette Vermeulen and Denise Arend, doing business in Mitchell, South Dakota, and continuously employed at least 15 individuals.

5. At all relevant times, Defendant Dakota Pork Industries has continuously been a South Dakota corporation doing business in Mitchell, South Dakota, and continuously employed at least 15 individuals.

2

6.  At all relevant times, Defendant Mitchell Temporary has been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. §12111(5), and Section 101(7), 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

7.  At all relevant times, Defendant Dakota Pork Industries has been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. §12111(5), and Section 101(7), 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

8.  At all relevant times, Defendant Mitchell Temporary has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. §12111(2).

9.  At all relevant times, Defendant Dakota Pork has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. §12111(2).

## GENERAL ALLEGATIONS

10. Defendant Dakota Pork Industries is a meat packing/ processing company.

11. Defendant Mitchell Temporary is a staffing firm that provided temporary, temp-to-hire, and direct-hire services to Dakota Pork.

12. Kryger is a disabled individual who sought employment with Dakota Pork, and was not hired either directly by Dakota Pork, or through Mitchell Temporary.

13. More than thirty days prior to the institution of this lawsuit, Kryger filed charges with the Commission alleging the Defendants violated Title I of the ADA.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

3

15. Since at least September 20, 1999, Defendants have engaged in unlawful employment practices, in violation of Section 102(a) of Title I of the ADA, 42 U.S.C. § 12112(a).

*Ms. Kryger's Disability:*

16. Kryger is deaf.

17. Kryger's disability substantially limits the major life activity of hearing.

*Ms. Kryger's Qualifications:*

18. In September, 1999, Kryger began seeking work in the Dakota Pork meat processing plant.

19. Kryger had previously worked for nearly four years in a chicken processing plant.

20. During the time Kryger was seeking work at Dakota Pork, the company was hiring.

21. During the time Kryger was seeking work at Dakota Pork, the company preferred applicants with prior meat processing experience.

22. During the time Kryger was seeking work at Dakota Pork, the company hired several employees who were less qualified than Kryger.

23. During the time Kryger was seeking work at Dakota Pork, Mitchell Temporary hired several employees to work at Dakota Pork, who were less qualified then Kryger.

4

### *Ms. Kryger's applications to Mitchell Temporary:*

24.     During the relevant time period, Mitchell Temporary would keep applications on file for a year, and fill positions from applications on file.

25.     On September 20, 1999, Kryger applied at Mitchell Temporary to work at Dakota Pork.

26.     Kryger's application dated September 20, 1999, indicates her prior work experience in meat processing.

27.     When Kryger applied in September, 1999, she was interviewed at Mitchell Temporary.

28.     Kryger was not provided an interpreter for the interview at Mitchell Temporary in September, 1999.

29.     The interview at Mitchell Temporary in September, 1999, was conducted by exchanging notes.

30.     On September 20, 1999, Mitchell Temporary told Kryger that no jobs were available at Dakota Pork.

31.     On September 20 and 21, 1999, Mitchell Temporary hired six employees to work at Dakota Pork.

32.     Of the six employees hired on September 20 and 21, 1999, none were known to be disabled.

33.     On or about January 6, 2000, Kryger again applied to Mitchell Temporary for work at Dakota Pork.

5

34. Kryger's application dated January 6, 2000, indicates she had nearly four years of prior work experience in meat processing.

35. Kryger's application dated January 6, 2000, indicates she would work any shift, any day.

36. Kryger was not hired when she reapplied for work on January 6, 2000.

37. On February 28, 2000, Mitchell Temporary hired Theresa Wolfcale and several employees to work at Dakota Pork.

38. On February 29, 2000, Kryger learned Wolfcale had quit her job at Dakota Pork.

39. On March 1, 2000, Kryger went to Mitchell Temporary to apply for the job Wolfcale had quit.

40. On March 1, 2000, Mitchell Temporary told Kryger that Dakota Pork did not need a replacement for Wolfcale.

41. Less than an hour after Kryger was told no jobs were available, Kryger's brother, who is not disabled, applied at Mitchell Temporary and was offered a job working at Dakota Pork.

42. On March 2, 2000, Mitchell Temporary hired four employees to work at Dakota Pork.

43. Of the four employees hired March 2, 2000, to work at Dakota Pork, none were disabled.

44. Effective March 31, 2000, Mitchell Temporary stopped providing employees to Dakota Pork.

45. Between September 20, 1999, and March 31, 2000, Mitchell Temporary hired 67 employees to work at Dakota Pork.

46. None of these 67 employees was disabled.

*Ms. Kryger's application to Dakota Pork:*

47. During the time Kryger was seeking employment at Dakota Pork, the company was accepting applications from walk-in applicants, as well as other sources such as Mitchell Temporary and Job Service.

48. Because of her disability, Kryger is provided job-search and vocational assistance from a Community Service Specialist, Mark Koterwski.

49. During the time Kryger was seeking work at Dakota Pork, Koterwski contacted Dakota Pork on several occasions, inquiring about employment opportunities for Kryger.

50. Koterwski informed Dakota Pork that Kryger was a deaf applicant who had prior meat processing experience.

51. Each time Koterwski called Dakota Pork, the company made some excuse for not allowing Krgyer to apply at that time.

52. On one occasion, Kryger attempted to apply at Dakota Pork in person.

53. A security guard refused Kryger entry onto the premises and informed her that she had to apply through Job Service.

54. During the time Kryger was seeking employment at Dakota Pork, the company hired several applicants who were less qualified than Kryger.

7

## FIRST CLAIM FOR RELIEF
### (Failure to Hire)

55. Plaintiff realleges the foregoing paragraphs of this complaint.

56. Kryger is disabled as defined in the ADA. 42 U.S.C. § 12102(2)(A).

57. Kryger is able, with or without reasonable accommodation, to perform the essential functions of various positions available at Dakota Pork during the relevant time period.

58. Defendants refused to hire Kryger because of her disability.

59. Defendants' refusal to hire Kryger because of her disability is in violation of the Americans with Disabilities Act, including but not limited to Section 102(a). 42 U.S.C. §12112(a), 12112(b)(5)(B).

60. As a result of Defendant's unlawful employment practices complained of herein, Kryger has suffered damages, including but not limited to emotional distress, lost earnings and benefits, and job search expenses, in amounts subject to proof.

61. The unlawful employment practices complained of herein, were intentional.

62. The unlawful employment practices complained of herein, were done with malice or reckless indifference to Kryger's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in disparate or

adverse treatment of disabled employees or applicants and engaging in any other employment practice which discriminates on the basis of disability.

B.   Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of past and present unlawful employment practices.

C.   Order Defendants to make whole Ms. Kryger by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement with all attendant rights and benefits or frontpay.

D.   Order Defendants to make whole Ms. Kryger by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search and medical expenses, in amounts to be determined at trial.

E.   Order Defendants to make whole Ms. Kryger by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.   Order Defendants to pay Ms. Kryger punitive damages as warranted for its reckless indifference to her federally protected rights, as described above, in amounts to be determined at trial.

G.   Grant such further relief as the Court deems necessary and proper in the public interest.

9

H.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: September 26, 2003

Respectfully Submitted,

ERIC S. DREIBAND
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN REAMS
Associate General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION
1801 L Street, N.W.
Washington, DC  20507

JOSEPH H. MITCHELL
Regional Attorney

10

NANCY A. WEEKS
Supervisory Trial Attorney

RITA BYRNES KITTLE
Trial Attorney

*/s/ Ann L. Fuller*
ANN L. FULLER
Trial Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Denver District Office
303 East 17th Avenue, Suite 510
Denver, CO 80203
(303) 866-1347
FAX (303) 866-1375

NOTE: It is sufficient for service on the EEOC that pleadings, notices, and any other court documents be served on the Trial Attorneys. Duplicate service is not required on the General Counsel in Washington, D.C.

11