IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**COPY**
ORIG. FILED

JUN 22 2004

JOSEPH HAAS
Clerk

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, | § § § § | |
| vs. | § § | CIVIL ACTION NO. 03-4222 |
| MITCHELL TEMPORARY and, DAKOTA PORK INDUSTRIES Defendants. | § § § § | |

## DAKOTA PORK INDUSTRIES' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT ON MITCHELL TEMPORARY SERVICES CROSS CLAIMS

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Dakota Pork Industries, Inc. ("Dakota Pork") asks this Court to enter judgment as a matter of law on all cross-claims asserted by Defendant Mitchell Temporary Services ("Mitchell"). In support thereof, Dakota Pork would show as follows:

I.
### SPECIFIC SUMMARY JUDGMENT POINTS

1. South Dakota Law 53-9-3 prohibits indemnity contracts that attempt to exempt a party to the contract from responsibility for that party's negligence or willful injury to another. Here, Mitchell relies on its services contract in an effort to obtain contractual indemnity from Dakota Pork for Mitchell's own unlawful, negligent, discriminatory conduct. As such, the indemnity clause is unenforceable as a matter of law.

2. The Mitchell indemnity clause contains no language requiring Dakota Pork to indemnify Mitchell for Mitchell's wrongful acts.[1] This is a second, independent reason the indemnity contract cannot require Dakota Pork to indemnify Mitchell for Mitchell's own negligence and unlawful conduct.

---

[1] See Exhibit A, the Mitchell Services contract, which is attached and incorporated by reference. This contract was produced by Mitchell in conjunction with its Initial Disclosures on March 15, 2004.

44932


EXHIBIT

3. Under both state and federal jurisdictions, the rule is that when a contract is clear and unambiguous and speaks to a subject it is expected to, there is no need to go beyond the four corners of the contract. Accordingly, Mitchell is bound exclusively by the contract and cannot seek to introduce extrinsic evidence to support the allegations in its cross-claim. This principle is codified by South Dakota statutory law 53-8-5, which provides that oral negotiations or stipulations are superseded by a written contract. Thus, Mitchell may not attempt to introduce parol evidence in an effort to vary, contradict or add to the terms of the Mitchell services contract.

4. The Mitchell services contract unambiguously provides Mitchell with sole responsibility for recruiting and assigning its employees to Dakota Pork. As an example of Mitchell's exclusive control over its employees, the services contract entitles Mitchell to sue Dakota Pork in the event Dakota Pork unilaterally hires a Mitchell employee. Clearly, the Mitchell services contract evidences the parties' intent that Mitchell, not Dakota Pork, was vested with sole discretion regarding which of its temporary employees were assigned to Dakota Pork for temporary work. Alternatively, to the extent that any ambiguity exists in the language of the Mitchell services contract, such ambiguity must be strictly construed against Mitchell, the drafter, and in favor of Dakota Pork's reasonable construction of such language.[2]

## II.
## STATEMENT OF MATERIAL FACTS

1. On January 8, 2001, Varla Kryger filed a Charge of Discrimination against Dakota Pork alleging that she was discriminated against in violation of the Americans With Disabilities Act of 1990 ("ADA").

2. In its Original Complaint, the Equal Employment Opportunity Commission (EEOC) sued Defendants Dakota Pork and Mitchell Temporary Services, alleging that both parties unlawfully refused to hire her because she is deaf.[3]

3. Varla Kryger filed her Intervention into this lawsuit on March 3, 2004, alleging discrimination by Mitchell and Dakota Pork under the ADA. In particular, Kryger alleges that Defendants engaged in an ongoing pattern of discrimination from February 28, 2000 until August 15, 2000, during which time Dakota Pork hired less qualified applicants and refused to hire Kryger because of her disability.[4]

---

[2] See Exhibit B, Affidavit of Dan Jarabek.

[3] See EEOC's Complaint and Jury Trial Demand, filed on October 7, 2003, ¶¶

[4] See Varla Kryger's Complaint and Jury Trial Demand, filed on March 3, 2004, ¶¶ 18-54.

2

4. In conjunction with its Original Answer to Plaintiff's Complaint, Mitchell Temporary asserted a cross claim against Dakota Pork, which alleges that Mitchell is entitled to contractual indemnity for "any liability as alleged in Plaintiff's Complaint."[5]

5. Mitchell's claim for indemnity is based on a services contract executed by Mitchell and Dakota Pork on November 5, 1998.[6] The contract relates to Mitchell's placement of its employees at Dakota Pork for temporary work on an "as needed" basis.[7]

## III.
## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[8] If the moving party meets its burden of showing that no genuine issue of material fact exists, the non-moving party must set forth specific facts showing that there is a genuine need for trial, and that more than merely some metaphysical doubt exists regarding these material facts.[9] Partial summary judgment is likewise proper regarding any undisputed issues of material fact.[10]

## IV.
## CONCLUSION

For the reasons stated in this Motion and the accompanying Brief in Support, incorporated herein for all purposes, Dakota Pork respectfully requests that this Court grant its Motion for Summary Judgment and dismiss all cross claims for contractual indemnity that have been asserted by Mitchell Temporary against Dakota Pork Industries, Inc. Alternatively, partial summary judgment is proper to the extent

---

[5] *See* Separate Answer of Mitchell Temporary and Cross Claim, p. 5-6.

[6] *See* Exhibit A.

[7] *Id.*

[8] FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

[9] *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

[10] FED. R. CIV. P. 56; *J.F. Blackford v. Action Products Co., Inc.*, 92 F.R.D. 79, 79-80 (W.D. Mo. 1981).

Mitchell seeks indemnity for its own negligence and unlawful, discriminatory conduct. Dakota Pork further requests costs of court, attorneys' fees, and any and all other relief to which it may show itself justly entitled.

Respectfully submitted,

ALANIZ AND SCHRAEDER, L.L.P.

Terry E. Schraeder
16010 Barker's Point Lane, Ste. 500
Houston, Texas 77079
Telephone: (281) 531-0927
Facsimile: (281) 531-8024

George N. Manolis
Churchill, Manolis, Freeman,
    Kludt, Shelton & Burns
P.O. Box 176
Huron, SD 57350-0176
Telephone No. (605) 352-8624
Facsimile No. (605) 352-2205

ATTORNEYS FOR DEFENDANT
DAKOTA PORK INDUSTRIES

## CERTIFICATE OF SERVICE

I certify that on the ____ day of June, 2004, a true and correct copy of Defendant Dakota Pork Industries' Request Motion for Partial Summary Judgment was forwarded by certified mail, return receipt requested, to the following:

Ann L. Fuller
Equal Opportunity Commission
Denver District Office
303 E. 17th Avenue
Suite 510
Denver, CO 80203

Jack Theeler
Morgan, Theeler, Wheeler, Cogley, & Peterson, L.L.P
221 East Third Avenue
P.O. Box 1025
Mitchell, SD  57301-7025

Donald P. Knudsen
440 Mt. Rushmore Road, Fourth Floor
P.O. Box 8045
Rapid City, SD 55709-8045

David M. Minces

Exhibit 2



# MITCHELL TEMPORARY

## Temporary Help and Secretarial Services

1317 West Havens
Mitchell, SD 57301
Phone: (605) 996-1160
Fax:     (605) 996-5855

CONTRACT NO:   1061 Rev. #1
CLIENT NAME:   Dakota Pork
CONTACT:       Dan Jarabek
ADDRESS:       915 East Havens St. Mitchell
TELEPHONE:     605-996-2220

CLIENT hereby enters into a contract with MITCHELL TEMPORARY for the purpose of securing temporary workers on an as-needed basis. The period of employment initially specified may be altered without further signature by either party on this agreement.

PERIOD OF ASSIGNMENT, SKILLS REQUIRED, JOB DESCRIPTION, EQUIPMENT TO BE USED, AND ANY OTHER SPECIAL REQUIREMENTS:

November 2, 1998, Temporary Employees will be notified that when there is work on Saturday and Sunday, they will be required to work those days as well as their regular schedule.

* Temporary employees will be notified by Dakota Pork on Monday about Sunday work and Thursday about Saturday work.

RATES TO MITCHELL TEMPORARY: $  11.90 PER HOUR / 3rd Shift $  12.45 PER HOUR (plus sales tax where applicable), payable 15 days from the date of each weekly invoice. The temporary worker's time sheet, signed by the employee and the CLIENT, will be delivered to MITCHELL TEMPORARY at the end of the weekly pay period (or end of work assignment, if earlier). Federal laws require that all employees be paid time-plus-one-half wages for over 40 hours' work performed in one weekly pay period, and the rate to be paid to MITCHELL TEMPORARY will be increased accordingly for said overtime hours.

MITCHELL TEMPORARY guarantees the aforementioned rates through 12-31-98.
The parties agree to review rates on an annual basis and, if agreed, to adjust rates in order to ensure that MITCHELL TEMPORARY continues to be able to recruit and retain high quality temporary employees.

MITCHELL TEMPORARY agrees to assume full responsibility for paying its temporary employees, withholding and transmitting payroll taxes, making unemployment contributions, and responding to claims for unemployment and workers' compensation proceedings involving temporary employees. It is understood by the CLIENT that MITCHELL TEMPORARY employees are covered by workers' compensation insurance, and not by fidelity bond, and MITCHELL TEMPORARY assumes no other liability. *CLIENT at* *r ..... to* *expedite at first appel of living terms in order ..or Claims to be filed within filing*

CLIENT agrees to indemnify and hold harmless MITCHELL TEMPORARY and its employees from and against any and all claims, losses, actions, damages, expenses, liabilities, or claims for attorneys' fees arising out of or resulting from (a) the temporary employees' use or operation of CLIENT's owned, non-owned or leased vehicles, machinery, wrongful acts, decisions, statements, acts or omissions by the CLIENT, its agents or employees or by any other person.

Exhibit 2 Page 2

-2-

MITCHELL TEMPORARY acknowledges that it and its temporary employees may be given access to or acquires information, which is proprietary or confidential to CLIENT and its customers. MITCHELL TEMPORARY agrees to hold such information in strict confidence and agrees to advise its employees of their obligation to keep such information confidential and to require its employees to enter into Confidentiality Agreements for the protection of the CLIENT.

CLIENT acknowledges that MITCHELL TEMPORARY has incurred substantial recruitment, screening, administrative and marketing expenses with respect to its temporary employees. Accordingly, CLIENT agrees not to directly or indirectly offer to hire or engage as an independent contractor any temporary employee assigned to CLIENT by MITCHELL TEMPORARY for a period of 12 months after completion of the temporary employee's payroll of any other firm for a like period, without the express written permission of MITCHELL TEMPORARY. In the event CLIENT violates this paragraph, CLIENT promises to promptly pay MITCHELL TEMPORARY, as liquidated damages and not as a penalty, 5% of the temporary employee's annualized compensation, and to reimburse MITCHELL TEMPORARY for its reasonable attorneys' fees incurred to enforce its rights hereunder.

**CONVERSION FEE**: In the event the CLIENT offers permanent employment on its payroll to any MITCHELL TEMPORARY employee referred to them, and the temporary employee accepts employment with the CLIENT, the CLIENT is responsible for payment of the **Temp-to-Permanent position fee to Mitchell Temporary**. The fee not to exceed 5% of the employees annualized compensation. If the MITCHELL TEMPORARY employee has worked over 90 days at the CLIENT's workplace in the last 12 months, the fee will be waived. Credit will be given for days worked by the temporary employee (for example, if the temporary employee has 30 working days at the CLIENT's workplace, the fee will be reduced by one-third).

CLIENT agrees that the representative who signs this agreement is authorized to do so and that MITCHELL TEMPORARY may rely upon that signature as binding upon the CLIENT.

The above conditions are herewith agreed upon by the CLIENT and MITCHELL TEMPORARY on this _5th_ day of _December_, 19 _98_.


_____
MITCHELL TEMPORARY

_____
CLIENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

EQUAL EMPLOYMENT                §
OPPORTUNITY COMMISSION,          §
            Plaintiff,           §
                                 §
v.                               §     CIVIL ACTION NO. 03-4222
                                 §
MITCHELL TEMPORARY and,          §
DAKOTA PORK INDUSTRIES           §
            Defendants.          §

## AFFIDAVIT OF DAN JARABEK

Before me, the undersigned notary, on this day personally appeared Dan Jarabek, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said:

1. "My name is DAN JARABEK. I am over eighteen years of age, of sound mind and am capable of making this affidavit. I have personal knowledge of the facts stated in this affidavit, and they are true and correct.

2. I am the Personnel Manager at Dakota Pork Industries. I have held this position since 1983. I am the person that signed the Mitchell Temporary services contract on November 5, 1998. Attached as Exhibit "A" is a true and correct copy of this contract. My signature is on this document above the word "CLIENT" on page 2 of Exhibit "A."

3. I did not draft, write, revise or otherwise assist in the preparation of the terms of the contract attached as Exhibit "A."

DAN JARABEK

Sworn to and subscribed before me by DAN JARABEK on June 15, 2004.

Notary Public in and for
The State of South Dakota

My commission expires on: _11-9-2006_

#45456                                    1

COPY
ORIG. FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

JUN 2 2 2004

JOSEPH HAAS
Clerk

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 03-4222 |
| MITCHELL TEMPORARY and, DAKOTA PORK INDUSTRIES Defendants. | §<br>§<br>§<br>§ | |

**BRIEF IN SUPPORT OF DEFENDANT DAKOTA PORK INDUSTRIES' MOTION
FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION FOR
PARTIAL SUMMARY JUDGMENT ON MITCHELL
TEMPORARY SERVICES CROSS CLAIMS**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dakota Pork Industries, Inc. ("Dakota Pork") files this Brief in Support of Dakota Pork Industries' Motion for Summary Judgment and Alternative Motion for Partial Summary Judgment on Mitchell Temporary Services' Cross Claims. In support, Dakota Pork would respectfully show this Court that there is no genuine issue of material fact regarding the enforceability of Mitchell Temporary Services' ("Mitchell") cross claims for indemnity. As such, summary judgment is proper on all of Mitchell's claims for contractual indemnity. Alternatively, partial summary judgment is proper to the extent Mitchell seeks indemnity for its own unlawful, discriminatory conduct.

I.
## TABLE OF CONTENTS

I.    TABLE OF CONTENTS.................................................................. 2

II.   TABLE OF AUTHORITIES ......................................................3-4

III.  SUMMARY OF ARGUMENT ....................................................5-6

IV.   STATEMENT OF FACTS ..........................................................6-7

V.    SUMMARY JUDGMENT STANDARD............................................ 7

VI.   ARGUMENT AND AUTHORITIES ...........................................8-14

    A.    SOUTH DAKOTA STATUTORY LAW PROHIBITS INDEMNITY FOR UNLAWFUL ACTS

    B.    THE MITCHELL INDEMNITY CLAUSE CONTAINS NO LANGUAGE REQUIRING DAKOTA PORK TO INDEMNIFY MITCHELL FOR MITCHELL'S UNLAWFUL ACTS

    C.    CONTRACT CONFIRMS MITCHELL ALONE CONTROLLED WHICH EMPLOYEES WERE ASSIGNED TO DAKOTA PORK

    D.    MITCHELL BOUND BY "FOUR CORNERS" OF SERVICES CONTRACT

    E.    ANY AMBIGUITY IN INDEMNITY PROVISION MUST BE RESOLVED IN FAVOR OF DAKOTA PORK

VII.  CONCLUSION .........................................................................14

VIII. PRAYER FOR RELIEF..............................................................15

# II.
# TABLE OF AUTHORITIES

**A.   CASE LAW**

*AFSCME Local 1922 v. State*, 444 N.W.2d 10 (S.D. 1989)............................ 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................. 7

*Associated Engineers v. Job*, 370 F.2d 633 (8th Cir. 1967) ........................... 10

*Bartak v. Bell-Gallyardt & Wells, Inc.*, 473 F. Supp. 737 (D.S.D. 1979)............ 13

*Bell v. East River Electric Power Cooperative, Inc.*,
535 N.W.2d 750 (S.D. 1995) ................................................................. 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)..................................... 7

*Chicago & Northwestern Transportation Co. v. V & R Sawmill, Inc.*,
501 F. Supp. 278 (D.S.D. 1980)............................................................. 9

*Clements v. Gabriel*, 472 N.W.2d 480, 483 (S.D. 1991) ............................... 13, 14

*Eberle v. McKeown*, 159 N.W.2d 291 (S.D. 1968)....................................... 13

*Greene v. Morgan, Theeler, Cogley & Petersen*, 575 N.W.2d 457 (S.D. 1997).. 8

*Heinert v. Home Federal Savings & Loan Association of Sioux Falls*, 444 N.W.2d
718, 720 (S.D. 1989)........................................................................... 13

*J.F. Blackford v. Action Products Co., Inc.*, 92 F.R.D. 79 (W.D. Mo. 1981)........ 7

*Johnson v. Rapid City Softball Association*, 514 N.W.2d 693, 705 (S.D. 1994)... 12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp*
475 U.S. 574, 586-87 (1986) ................................................................. 7

*Northwestern Public Service Co. v. Chicago & Northwestern Railway Co.*,
210 N.W.2d 158, 160 (S.D. 1973)........................................................... 12, 13

*Singpiel v. Morris*, 582 N.W.2d 715 (S.D. 1998)......................................... 12

*Schull Constr. Co. v. Koenig*, 80 S.D. 224 (1963)....................................... 10

*Thompson v. Dakota Indep. Oil Co.*, 288 N.W. 148 (S.D. 1939).................... 12

**B.**   RULES

Fed.R.Civ.P. 56 ...................................................................   1, 7

**C.**   STATUTES

South Dakota Codified Laws Ann. (S.D.C.L. § 53-9-3) (2004)......................   5, 8

South Dakota Codified Laws Ann. (S.D.C.L. § 53-8-5) (2004)......................   13

## III.
## SUMMARY OF ARGUMENT

Mitchell's cross-claim for indemnity is legally unenforceable as a matter of law.  First, Mitchell claims entitlement to contractual indemnity from Dakota Pork for "all liabilities that Mitchell owes to the Plaintiff," which would include indemnity for Mitchell's own discrimination against Plaintiff.[1]  In support, Mitchell relies on an indemnity clause in the services contract between Mitchell and Dakota Pork.

Mitchell's proposed construction of this clause, if enforced, would violate South Dakota law by requiring Dakota Pork to indemnify Mitchell for negligence and discriminatory conduct attributable to Mitchell.[2]  Accordingly, the indemnity clause cannot be enforced as alleged by Mitchell, and summary judgment is proper on Mitchell's cross claim.  Alternatively, to the extent total summary judgment is not proper, partial summary judgment must be granted on Mitchell's claim for indemnity for its own negligence and discriminatory conduct.

Second, Mitchell alleges the services contract provided Dakota Pork with sole discretion to hire and assign Mitchell employees.[3]  However, the contract contains no such provision.[4]  It is a longstanding rule of contractual construction that courts look only to the four corners of a contract to ascertain the terms of the contract and the intent of the parties.  As such, Mitchell's request for this Court to assume terms not explicitly included in the contract must be summarily rejected.

The plain language of the contract clearly and unambiguously provides Mitchell with sole discretion to **"recruit," "retain," "hire" _and_ "assign"** **"its**

---

[1] See Separate Answer of Mitchell Temporary and Cross-Claim, p. 6.

[2] See S.D.C.L. 53-9-3 (1998).

[3] See Separate Answer of Mitchell Temporary and Cross-Claim, p. 5, ¶ 34.

[4] Id.

44939

employees," while also establishing their rates of pay.[5] Conversely, the contract contains no language that provided Dakota Pork with discretion or control over which Mitchell employees were assigned to Dakota Pork during the time period in question.[6]

Any discrimination against Plaintiff related to temporary work at Dakota Pork is attributable to Mitchell, who assigned its own employees. As such, Mitchell's attempt to shift its own liability onto Dakota Pork on the basis of a strained construction of its own indemnity clause must be rejected, and Mitchell's cross claims should be dismissed with prejudice.

## IV.
## STATEMENT OF FACTS

On January 8, 2001, Varla Kryger filed a Charge of Discrimination against Dakota Pork alleging discrimination in violation of the Americans With Disabilities Act of 1990 ("ADA"). In particular, Kryger alleges that Dakota Pork and Mitchell Temporary engaged in an ongoing pattern of discrimination from February 28, 2000 until August 15, 2000, during which time Dakota Pork hired less qualified applicants and refused to hire Kryger because of her disability.[7]

After Dakota Pork timely filed its response to the Charge, the EEOC issued its Dismissal and Notice of Suit Rights on June 12, 2001, finding no violation of the ADA. However, on August 27, 2001, the EEOC issued a Notice of Intent to Reconsider. On November 28, 2001, the EEOC inexplicably reversed

---

[5] See Exhibit A, Mitchell Temporary Services Contract, executed between Mitchell Temporary and Dakota Pork on November 5, 1998. A copy of this contract was produced in conjunction with Mitchell Temporary Services' Initial Disclosures and is therefore self-authenticating.

[6] See Exhibit A.

[7] See Complaint and Jury Trial Demand filed by EEOC on September 26, 3003.

44939                                                                                6

its position and issued a second Determination, finding that Kryger's claim might have merit.

On September 26, 2003, the EEOC filed its Original Complaint against Dakota Pork and Mitchell Temporary.[8]   On December 24, 2003, Mitchell Temporary filed is Original Answer and Cross Claim against Dakota Pork.[9]   The Mitchell cross claim must be summarily dismissed because it asks for relief that would violate South Dakota law.  Further, the cross claim relies on a purported agreement not contained in the plain language of the contract.

## V.
## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[10]    If the moving party meets its burden of showing that no genuine issue of material fact exists, the non-moving party must set forth specific facts establishing a genuine need for trial, and that more than merely some metaphysical doubt exists regarding these material facts.[11]  If total summary judgment is not warranted, summary judgment is proper for any undisputed issues of material fact.[12]

---

[8] *See* Complaint and Jury Trial Demand, filed by EEOC on September 26, 3003.

[9] *See* Separate Answer of Mitchell Temporary and Cross-Claim.

[10] FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255-56 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986).

[11] *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

[12] FED. R. CIV. P. 56; *J.F. Blackford v. Action Products Co., Inc.,* 92 F.R.D. 79, 79-80 (W.D. Mo. 1981).

**VI.**

**ARGUMENTS AND AUTHORITIES**

**A.**   **SOUTH DAKOTA STATUTORY LAW PROHIBITS INDEMNITY FOR UNLAWFUL ACTS**

In South Dakota, contracts that violate public policy are legislatively proscribed. Chapter 53-9 of South Dakota Codified Laws is entitled "Unlawful Contracts" and enumerates the specific types of contracts that are unenforceable as a matter of law. Among those prohibited are contracts that attempt to excuse a party for liability arising from that party's own illegal conduct. Specifically, Law 53-9-3 provides as follows:

> **All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud or willful injury to the person or property of another or from violation of law whether willful or negligent, are against the policy of the law.**[13]

**1.**   **The Mitchell Allegation**

Despite the unambiguous mandate of Law 53-9-3, Mitchell has filed a cross-claim against Dakota Pork seeking indemnity that would clearly violate South Dakota Law. Specifically, Mitchell alleges the following in its cross-claim against Dakota Pork:

> *Dakota Pork further agreed to indemnify Mitchell Temporary for any liabilities or damages resulting from Dakota Pork's actions, and Mitchell Temporary is thereby entitled to indemnification from Dakota Pork for* **any liability as alleged in Plaintiff's Complaint.**[14]

---

[13] *See* S.D.C.L. § 53-9-3; *Greene v. Morgan, Theeler, Cogley & Petersen*, 575 N.W.2d 457, 465 (S.D. 1998).

[14] *See* Separate Answer of Mitchell Temporary and Cross Claim, ¶ 34 (emphasis added).

44939
8

## 2. The Liability Alleged by Varla Kryger and the EEOC

Clearly, the critical language in the Mitchell cross claim is its claim to indemnity for "any liability as alleged in Plaintiff's Complaint." Plaintiff's causes of action include claims that Mitchell violated the ADA by refusing to assign Varla Kryger to a temporary position at Dakota Pork because she is hearing impaired.[15]   By seeking indemnity for "any liability as alleged in Plaintiff's Complaint," Mitchell claims entitlement to indemnity from Dakota Pork for *its own discriminatory conduct.* This variety of indemnity is clearly prohibited by South Dakota Law, and Mitchell's construction of the indemnity clause, as set forth in the Mitchell cross claim, must be rejected as a matter of law.[16]

## 3. The Indemnity Language

The indemnity clause in question provides as follows:

> **CLIENT [Dakota Pork] agrees to indemnify and hold harmless MITCHELL TEMPORARY and its employees from and against any and all claims, losses, actions, damages, expenses, liabilities, or claims for attorneys' fees arising out of or resulting from (a) the temporary employees' use or operation of CLIENT's owned, non-owned or leased vehicles, machinery, *wrongful acts*, decisions, statements, acts or omissions by the CLIENT, its agents or employees or *by any other person.*[17]**

Mitchell alone drafted this clause.[18]  As a result, Mitchell is bound by its terms and limitations and Mitchell's attempt to broaden its scope in a self-serving attempt to evade liability is improper.

---

[15] *See* Varla Kryger's Complaint and Jury Trial Demand, ¶¶ 18-54.

[16] *See Chicago & Northwestern Transportation Co. v. V & R Sawmill, Inc.,* 501 F. Supp. 278 (D.S.D. 1980).

[17] *See* Exhibit A, p. 2.

[18] *See* Exhibit B, Affidavit of Dan Jarabek.

**B.    THE MITCHELL INDEMNITY CLAUSE CONTAINS NO LANGUAGE REQUIRING DAKOTA PORK TO INDEMNIFY MITCHELL FOR MITCHELL'S UNLAWFUL ACTS**

In addition to the fact that Mitchell seeks indemnity that would violate South Dakota Law, the indemnity clause also lacks any language that would require Dakota Pork to indemnify Mitchell for Mitchell's wrongful acts. This constitutes a second reason that Mitchell's construction of the clause must be rejected. In South Dakota, courts do not read into a written contract indemnity provisions that are not expressly set forth therein.[19] This rule ensures that indemnitors are not legally required to assume liability unless they had fair notice at the time the contract was executed.

Accordingly, there are two independent reasons Mitchell's cross-claims must be rejected. First, the indemnity sought by Mitchell would violate South Dakota law. Second, the clause contains no language that can be reasonably construed to require Dakota Pork to indemnify Mitchell Temporary for discriminatory _attributable to Mitchell_. Because of this, the indemnity clause should be either (1) severed from the contract; or (2) limited to indemnity relating only to unlawful conduct that can be solely attributed to Dakota Pork at trial.

**C.    CONTRACT CONFIRMS MITCHELL ALONE CONTROLLED WHICH EMPLOYEES WERE ASSIGNED TO DAKOTA PORK**

In attempting to shift responsibility for its own discriminatory conduct onto Dakota Pork, Mitchell also alleged the following in its cross-claim:

> **Mitchell Temporary had a contractual arraignment [sic] with Dakota Pork, which agreement provided that the ultimate decision for placing and accepting employees, was with Dakota Pork and not with Mitchell Temporary.**[20]

---

[19] See Associated Engineers v. Job, 370 F.2d 633, 649 (8th Cir. 1967), citing Schull Constr. Co. v. Koenig, 80 S.D. 224 (S.D. 1963).

[20] See Separate Answer of Mitchell Temporary and Cross-Claim, p. 5, ¶ 34.

The only accurate portion of Mitchell's allegations is the contention that Mitchell and Dakota Pork executed a services contract.   The remainder of Mitchell's basis for seeking indemnity is clearly refuted by a cursory review of the contract, which contains no such provision.[21]  Rather, the contract, <u>which was drafted exclusively by Mitchell</u>, confirms that Dakota Pork had no discretion in determining which Mitchell employees were assigned to Dakota Pork for temporary work.[22]

In particular, the following provisions in the Mitchell services contract confirm that Mitchell Temporary had **sole discretion** regarding which employees were placed at Dakota Pork:

- <u>**Mitchell**</u> establishes the rates of pay for its employees, pays their unemployment contributions, and handles any worker's compensation claims[23]

- <u>**Mitchell**</u> guarantees the rates of pay for a specified time period[24]

- <u>**Mitchell**</u> assumes full responsibility for paying its temporary employees[25]

- <u>**Mitchell**</u> recruits, screens and markets its employees[26]

- <u>**Mitchell**</u> assigns its employees and is contractually entitled to liquidated damages in the event that Dakota Pork or any other Mitchell client unilaterally hires a Mitchell employee without the express written permission of Mitchell[27]

As the above-referenced provisions clearly illustrate, Mitchell alone controlled <u>**and assigned**</u> its employees to Dakota Pork.  Thus, Mitchell's

---

[21] See <u>Exhibit A</u>.

[22] Id.

[23] See <u>Exhibit A</u>, p. 1.

[24] Id., p. 1.

[25] Id., p. 1.

[26] Id., p. 2.

[27] Id., p. 2.

44939

11

allegation that Dakota Pork contractually agreed to "place and accept" Mitchell employees is contradicted by the plain language of the contract – a contract drafted exclusively by Mitchell.  Since Mitchell alone retained the right to decide which of its employees were assigned to Dakota Pork, Mitchell is not entitled to indemnity from Dakota Pork relating to the selection – or exclusion – of Varla Kryger or any other employee Mitchell failed to assign to Dakota Pork for temporary work.  Therefore, summary judgment is proper on Mitchell's cross claim.

### D.   MITCHELL BOUND BY "FOUR CORNERS" OF CONTRACT

Under both state and federal jurisdictions, the rule is that when a contract is clear and unambiguous and speaks to a subject it is expected to, there is no need to go beyond the four corners of the contract.[28]   In examining a contract to determine the intent of the parties, courts must consider the contract as a whole.[29]   Accordingly, Mitchell is bound exclusively by the contract and cannot seek to introduce extrinsic evidence to support the allegations in its cross-claim. This principle is codified by South Dakota statutory law, which provides as follows:

> **The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.[30]**

---

[28] See AFSCME Local 1922 v. State, 444 N.W.2d 10, 12 (S.D. 1989); Johnson v. Rapid City Softball Ass'n, 514 N.W.2d 693, 705 (S.D. 1994).

[29] See Singpiel v. Morris, 582 N.W.2d 715, 718 (S.D. 1998).

[30] S.D.C.L.53-8-5.

It is well settled that parol evidence is inadmissible to vary, contradict or add to a written contract that is clear, definite and complete.[31]   Absent fraud, mistake or accident, it is presumed that the written agreement expresses the final intention of the parties upon the subject matter of the contract.[32] In determining the validity of this presumption, a contract should be considered as a whole and all parts and provisions examined to determine the meaning of any part.[33]

The effect of this rule in the instant case is that Mitchell is precluded from relying on any supposed agreements or obligations that are not embodied in the contract.  Pursuant to this rule, Mitchell's contention that Dakota Pork agreed to be ultimately responsible for "**placing and accepting employees**" must be summarily rejected as a basis for shifting liability from Mitchell onto Dakota Pork.

### E.   ANY AMBIGUITY IN INDEMNITY PROVISION MUST BE RESOLVED IN FAVOR OF DAKOTA PORK

When the language or intent of a contract is challenged, the burden of proof is on the drafting party to clearly prove the provision is both legally enforceable against the indemnitor and within the scope of the agreement.[34]  If the language in the challenged provision is ambiguous, the provision must be given the construction advocated by the non-drafting party, typically the indemnitor.[35]  Thus, to the extent that the Court finds the indemnity language to

---

[31] *See Northwestern Public Service Co. v. Chicago & Northwestern Railway Co.*, 210 N.W.2d 158, 160 (S.D. 1973), *citing Thompson v. Dakota Indep. Oil Co.*, 288 N.W. 148 (S.D. 1939).

[32] *Id.*

[33] *See Northwestern Public Service Co.*, 210 N.W.2d at 160, *citing Eberle v. McKeown*, 159 N.W.2d 291 (S.D. 1968).

[34] *See Clements v. Gabriel*, 472 N.W.2d 480, 483 (S.D. 1991); *Heinert v. Home Federal Savings & Loan Assoc. of Sioux Falls*, 444 N.W.2d 718, 720 (S.D. 1989); *Bartak v. Bell-Gallyardt & Wells, Inc.*, 473 F. Supp. 737, 739 (D.S.D. 1979).

[35] *Id.*

be ambiguous, Dakota Pork's construction, if reasonable, must be given conclusive effect regarding the parties' intent.

The reason for this rule is that the drafting party – Mitchell – is the only party with the opportunity to eliminate the potential for ambiguity by drafting an indemnity provision that is clear and unambiguous.[36]  Because of this rule, any ambiguity in the Mitchell contract is fatal to Mitchell's cross claims.  Regardless, Dakota Pork's duty to indemnify Mitchell, *if such a duty exists*, applies only to wrongful conduct solely attributable to Dakota Pork at the time of trial.  This is a reasonable construction of the Mitchell indemnity language and is the *only* construction that is consistent with both the parties' intent and South Dakota law.

## VII.
## CONCLUSION

Pursuant to South Dakota law, the Mitchell indemnity clause is unenforceable because it is relied upon by Mitchell to escape responsibility for its own unlawful conduct as it relates to Varla Kryger.  Here, the Mitchell indemnity clause violates South Dakota Law 53-9-3, and summary judgment is proper on Mitchell's cross claim for indemnity.  Alternatively, to the extent the clause is partially enforceable, Dakota Pork's duty to indemnify Mitchell applies *only* to unlawful conduct that is attributed exclusively to Dakota Pork at the time of trial.

---

[36] *See Clements*, 472 N.W.2d at 483.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Dakota Pork Industries respectfully requests an Order from this Court granting summary judgment on all cross claims for indemnity asserted by Mitchell Temporary Services. Alternatively, Dakota Pork Industries requests an order granting partial summary judgment and requiring Dakota Pork Industries to indemnify Mitchell only for wrongful conduct assigned to Dakota Pork Industries at the time of trial.

Respectfully submitted,

Terry E. Schraeder
Alaniz & Schraeder, L.L.P.
16010 Barker's Point Lane , Ste. 500
Houston, Texas 77079
Telephone: (281) 531-0927
Facsimile: (281) 531-8024

George N. Manolis
Churchill, Manolis, Freeman,
Kludt, Shelton & Burns
P.O. Box 176
Huron, SD 57350-0176
Telephone: (605) 352-8624
Facsimile:    (605) 352-2205

ATTORNEYS FOR DEFENDANT
DAKOTA PORK INDUSTRIES

## CERTIFICATE OF SERVICE

I certify that on the ___16___ day of June, 2004, a true and correct copy of Defendant Dakota Pork Industries' Request Motion for Partial Summary Judgment was forwarded by certified mail, return receipt requested, to the following:

Ann L. Fuller
Equal Opportunity Commission
Denver District Office
303 E. 17th Avenue
Suite 510
Denver, CO 80203

Jack Theeler
Morgan, Theeler, Wheeler, Cogley, & Peterson, L.L.P
221 East Third Avenue
P.O. Box 1025
Mitchell, SD  57301-7025

David M. Minces

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

EQUAL EMPLOYMENT §
OPPORTUNITY COMMISSION, §
        Plaintiff, §
§
v. §     CIVIL ACTION NO. 03-4222
§
MITCHELL TEMPORARY and, §
DAKOTA PORK INDUSTRIES §
        Defendants. §

## ORDER GRANTING DAKOTA PORK INDUSTRIES' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT ON MITCHELL TEMPORARY SERVICES' CROSS CLAIMS FOR INDEMNITY

On _____, 2004, this Court heard Defendant Dakota Pork Industries' Motion for Summary Judgment and alternative Motion for Partial Summary Judgment. After consideration of the arguments, authorities and summary judgment evidence, the Court is of the opinion that the motion has merit, and should be GRANTED pursuant to FRCP 56.

Accordingly, IT IS ORDERED as follows:

_____    The Mitchell Temporary indemnity clause is unenforceable as a matter of law. Accordingly, all cross claims asserted by Cross-Claimant Mitchell Temporary against Dakota Pork Industries are hereby dismissed with prejudice.

_____    Partial Summary Judgment is proper, and Cross-Claimant Mitchell Temporary is not entitled to indemnity for any of its own negligent, unlawful or discriminatory conduct. Accordingly, Mitchell Temporary is entitled to indemnity only for negligence and unlawful conduct that is attributed solely to Dakota Pork at the time of trial.

SIGNED this _____ day of _____, 2004.

_____
JUDGE PRESIDING

## CERTIFICATE OF SERVICE

I certify that on the _____ day of June, 2004, a true and correct copy of Defendant Dakota Pork Industries' Request Motion for Partial Summary Judgment was forwarded by certified mail, return receipt requested, to the following:

Ann L. Fuller
Equal Opportunity Commission
Denver District Office
303 E. 17th Avenue
Suite 510
Denver, CO 80203

Jack Theeler
Morgan, Theeler, Wheeler, Cogley, & Peterson, L.L.P
221 East Third Avenue
P.O. Box 1025
Mitchell, SD  57301-7025

David M. Minces

Exhibit 2



# MITCHELL TEMPORARY

## Temporary Help and Secretarial Services

1317 West Havens
Mitchell, SD 57301
Phone: (605) 996-1160
Fax:    (605) 996-5855

CONTRACT NO:   1061 Rev. #1
CLIENT NAME:   Dakota Pork
CONTACT:       Dan Jarabek
ADDRESS:       915 East Havens St. Mitchell
TELEPHONE:     605-996-2220

CLIENT hereby enters into a contract with MITCHELL TEMPORARY for the purpose of securing temporary workers on an as-needed basis. The period of employment initially specified may be altered without further signature by either party on this agreement.

PERIOD OF ASSIGNMENT, SKILLS REQUIRED, JOB DESCRIPTION, EQUIPMENT TO BE USED, AND ANY OTHER SPECIAL REQUIREMENTS:

November 2, 1998, Temporary Employees will be notified that when there is work on Saturday and Sunday, they will be required to work those days as well as their regular schedule.

* Temporary employees will be notified by Dakota Pork on Monday about Sunday work and Thursday about Saturday work.

RATES TO MITCHELL TEMPORARY: $ 11.90 PER HOUR / 3rd Shift $ 12.45 PER HOUR (plus sales tax where applicable), payable 15 days from the date of each weekly invoice. The temporary worker's time sheet, signed by the employee and the CLIENT, will be delivered to MITCHELL TEMPORARY at the end of the weekly pay period (or end of work assignment, if earlier). Federal laws require that all employees be paid time-plus-one-half wages for over 40 hours' work performed in one weekly pay period, and the rate to be paid to MITCHELL TEMPORARY will be increased accordingly for said overtime hours.

MITCHELL TEMPORARY guarantees the aforementioned rates through 12-31-98.
The parties agree to review rates on an annual basis and, if agreed, to adjust rates in order to ensure that MITCHELL TEMPORARY continues to be able to recruit and retain high quality temporary employees.

MITCHELL TEMPORARY agrees to assume full responsibility for paying its temporary employees, withholding and transmitting payroll taxes, making unemployment contributions, and responding to claims for unemployment and workers' compensation proceedings involving temporary employees. It is understood by the CLIENT that MITCHELL TEMPORARY employees are covered by workers' compensation insurance, and not by fidelity bond, and MITCHELL TEMPORARY assumes no other liability. *CLIENT ai. n .... /: expedite all first arpal of injury forms in order for Claims to be filed within 7 days*

CLIENT agrees to indemnify and hold harmless MITCHELL TEMPORARY and its employees from and against any and all claims, losses, actions, damages, expenses, liabilities, or claims for attorneys' fees arising out of or resulting from (a) the temporary employees' use or operation of CLIENT's owned, non-owned or leased vehicles, machinery, wrongful acts, decisions, statements, acts or omissions by the CLIENT, its agents or employees or by any other person.

Exhibit 2 Page 2

-2-

MITCHELL TEMPORARY acknowledges that it and its temporary employees may be given access to or acquires information, which is proprietary or confidential to CLIENT and its customers. MITCHELL TEMPORARY agrees to hold such information in strict confidence and agrees to advise its employees of their obligation to keep such information confidential and to require its employees to enter into Confidentiality Agreements for the protection of the CLIENT.

CLIENT acknowledges that MITCHELL TEMPORARY has incurred substantial recruitment, screening, administrative and marketing expenses with respect to its temporary employees. Accordingly, CLIENT agrees not to directly or indirectly offer to hire or engage as an independent contractor any temporary employee assigned to CLIENT by MITCHELL TEMPORARY for a period of 12 months after completion of the temporary employee's payroll of any other firm for a like period, without the express written permission of MITCHELL TEMPORARY. In the event CLIENT violates this paragraph, CLIENT promises to promptly pay MITCHELL TEMPORARY, as liquidated damages and not as a penalty, 5% of the temporary employee's annualized compensation, and to reimburse MITCHELL TEMPORARY for its reasonable attorneys' fees incurred to enforce its rights hereunder.

**CONVERSION FEE:** In the event the CLIENT offers permanent employment on its payroll to any MITCHELL TEMPORARY employee referred to them, and the temporary employee accepts employment with the CLIENT, **the CLIENT is responsible for payment of the Temp-to-Permanent position fee to Mitchell Temporary.** The fee not to exceed 5% of the employees annualized compensation. If the MITCHELL TEMPORARY employee has worked over 90 days at the CLIENT's workplace in the last 12 months, the fee will be waived. Credit will be given for days worked by the temporary employee (for example, if the temporary employee has 30 working days at the CLIENT's workplace, the fee will be reduced by one-third).

CLIENT agrees that the representative who signs this agreement is authorized to do so and that MITCHELL TEMPORARY may rely upon that signature as binding upon the CLIENT.

The above conditions are herewith agreed upon by the CLIENT and MITCHELL TEMPORARY on this _5th_ day of _December_, 19 _98_.


_____          _____
MITCHELL TEMPORARY                CLIENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

EQUAL EMPLOYMENT             §
OPPORTUNITY COMMISSION,      §
              Plaintiff,     §
                             §
v.                           §        CIVIL ACTION NO. 03-4222
                             §
MITCHELL TEMPORARY and,      §
DAKOTA PORK INDUSTRIES       §
              Defendants.    §

## AFFIDAVIT OF DAN JARABEK

Before me, the undersigned notary, on this day personally appeared Dan Jarabek, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said:

1. "My name is DAN JARABEK. I am over eighteen years of age, of sound mind and am capable of making this affidavit. I have personal knowledge of the facts stated in this affidavit, and they are true and correct.

2. I am the Personnel Manager at Dakota Pork Industries. I have held this position since 1983. I am the person that signed the Mitchell Temporary services contract on November 5, 1998. Attached as Exhibit "A" is a true and correct copy of this contract. My signature is on this document above the word "CLIENT" on page 2 of Exhibit "A."

3. I did not draft, write, revise or otherwise assist in the preparation of the terms of the contract attached as Exhibit "A."

DAN JARABEK

Sworn to and subscribed before me by DAN JARABEK on June 15, 2004.

Notary Public in and for
The State of South Dakota

My commission expires on: _11-9-2006_

#45456                               1